IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

FILED

1. KIM MANARD-HENKELMAN         )
2. SARAH MCDANIEL               )
                                )       NOV 29 2017
       Plaintiffs,              )
                                )       PATRICK KEANEY
                                )       Clerk, U.S. District Court
v.                              )       By_____
                                )             Deputy Clerk
                                )
                                )       CIV 17-441-KEW
1. THE PORT OF MUSKOGEE ex rel  )
the Muskogee City-County Port Authority, )
and                             )
2. SCOTT ROBINSON, individually and in )
his individual capacity as Port Director )
3. CHRIS WILLIAMS, individually and in )
his individual capacity as Deputy Port Director )
                                )       ATTORNEY LIEN CLAIMED
       Defendants,              )       JURY TRIAL DEMANDED

## COMPLAINT

**COMES NOW** the Plaintiffs, Kim Manard-Henkelman and Sarah McDaniel, and for their causes of action against the Defendants herein alleges as follows:

## PARTIES

1. Plaintiffs, Kim Manard-Henkelman and Sara McDaniel, are adult females residing in Muskogee County, State of Oklahoma.

2. Defendants are:

   a. The Port of Muskogee ex rel. The Muskogee City-County Port Authority ("Port"), an entity conducting business in Muskogee County, State of Oklahoma;

   b. Scott Robinson, as an individual and in his capacity as Port Director;

c. Chris Williams, as an individual and in his capacity as Deputy Port Director.

## JURISDICTION AND VENUE

3. Plaintiffs' causes of action are based on (1) gender discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 42 U.S.C. § 2000 et. seq., as amended. Gender discrimination is also prohibited by the Fourteenth Amendment to the United States Constitution and is made actionable by 42 U.S.C. § 1983; and (2) tortious interference with a contractual/employment relationship/prospective economic right.

4. Jurisdiction over Plaintiffs' federal causes of action is vested in this Court under 28 U.S.C. § 1331. This Court has supplemental jurisdiction over Plaintiffs' corresponding state law claims as they arise out of the same core operative facts as the federal claims and jurisdiction over them is vested in this Court under 28 U.S.C. §1367(a).

5. All of the actions complained of herein occurred in Muskogee County, Oklahoma and the Defendants may be served in Oklahoma. Muskogee County is located within the Eastern District of Oklahoma; wherefore, venue is proper in this Court under 28 U.S.C. 1391 (b).

6. Plaintiffs timely filed a Charge of Discrimination with the EEOC on or about October 21, 2016. Plaintiffs subsequently received by mail a right to sue letter from the EEOC on or about September 9, 2017. This case is timely filed within the ninety (90) days of Plaintiffs' receipt of their right to sue letter.

## STATEMENT OF FACTS

7. Both Plaintiffs are adult females.

8.   Plaintiff, Kim Manard-Henkelman began working for the Port of Muskogee in approximately March of 2004.

9.   Plaintiff, Sara McDaniel began working for the Port of Muskogee in approximately September 2015.

10.   On or about March 14, 2016, The Port of Muskogee hired Chris Williams (aka Christopher Williams) as deputy port director.

11.   On or about May 12, 2016 both Plaintiffs were subject to gender/sexual harassment that was pervasive, hostile, adverse, and ongoing as detailed by specific instances below.

12.   On or about May 12, 2016 Kim Manard-Henkelman was on the job at the Port's Ship Store. The Port operates a marina and a ship store. At that time, the store was being leased to a third part vendor known as Three Fork Outfitters. Ms. Henkleman's office is also located in the ship store. Deputy Director Chris Williams came to the store. He asked me if the vendors were going to carry, "SaltPetter." Williams was a former Navy Sailor. Williams knew that Plaintiff Manard-Henkelman was a former Marine, and thus would be familiar with the term. The term SaltPetter is a product that is alleged to control the sexual desires of sailors and marines.

13.   On Thursday May 19, 2016, both Ms. Manard-Henkelman and Ms. McDaniel were at the ship store. Mr. Williams asked both Plaintiffs' if Three Forks Outfitters was going to carry SaltPeter, and followed this up with the question, "Where's the Condoms?"

14. On or about May 16, 2016 Plaintiff Sarah McDaniel was in the Port offices with fellow a fellow employee when Director Robinson questioned them about Mr. Williams conduct.

Mr. Robinson was made aware of the condom comments and comments that Mr. Williams made regarding his wife which Ms. McDaniel felt were demeaning towards women in general. Mr. Robinson advised both employees that they should either ignore Mr. Williams, or "give it back to him."

18. On or about June 23, 2016 Ms. McDaniel returned after having taken medical leave due to her pregnancy. Mr. Williams informed Plaintiff McDaniel that, "If having children were hard, God would have made men do it."

19. On or about June 30, 2016 Mr. Williams asked Plaintiff Sarah McDaniel if it was, "too late for your mom to have an abortion?"

20. On or about July 5, 2016, Mr. Williams informed Ms. McDaniel that if her job at the Port didn't work out, she could have a career as a "pole dancer."

21. Subsequent to the May 19 incident Mr. Williams began being very hostile towards Plaintiff, Ms. Manard-Henkelman, and began rearranging Ms. Manard-Henkelman's roles and responsibilities in retaliation.

22. On or about July 7th or 8th, the lights at the downtown office of the Port were out and needed to be replaced. Mr. Williams said he was going to change them. Ms. Manard-Henkelman volunteered to change them. Mr. Williams said, "No you can't do that' Mr. Williams then asked Ms. Manard-Henkelman if she knew why. Ms. Manard-Henkelman said it was because Port Director Scott Robinson would be upset because she would be on a ladder, and Director Robinson knew Ms. Manard-Henkelman had an existing injury from a fall on the harbor docks. Mr. Williams replied, "No, it's because you don't have a penis." At this time, the Port director, Scott Robinson was on vacation. Ms. Manard-Henkelman tried to contact Scott

Robinson regarding the altercation. Scott Robinson was not available, so Plaintiff followed what she believed was policy in order to initiate a complaint. Since Mr. Williams would be the next in charge to file a complaint, Plaintiff did not feel she could not file a complaint with him. Therefore, Plaintiff Manard-Henkelman went to see the chairman of the board of the port, Edwin L. Gage.

15. On or about July 19, 2016 Ms. Manard-Henkelman received a text from Director Scott Robinson telling her that Chris Williams was her boss and to "work it out" with Mr. Williams the individual responsible for the harassment in this instance.

16. On or about July 19, 2016, Mr. Williams informed Ms. Manard-Henkelman that she did not have the authority to fire one of her crew members. Ms. Manard-Henkelman had been given that authority for the previous six years by the Port Director. Ms. Manard-Henkelman believes this was in retaliation for their grievance concerning Mr. Williams's sexual harassment of the Plaintiffs.

17. 8. On or about July 20, 2016, Ms. Manard-Henkelman had a meeting with Chris Williams in which he blamed her for an event in which he had removed a woman that had rented the event center for a number of reasons. Chris Williams blamed Ms. Manard-Henkelman for a problem that had been created by the failure of another employee to correctly fill out the river center event lease document. During this altercation, Chris Williams asked Ms. Manard-Henkelman if she knew why the Navy had 13 buttons on their uniform? She replied that she didn't and he said it was so that the Marines, "would have a place to rest their heads while giving b*** j**." Chris Williams was aware that Ms. Manard-Henkelman was a former Marine.

23.     The pattern of harassment by Mr. Williams toward Plaintiffs Kim Manard-Henkelman and Sarah McDaniel continued, was pervasive, severe, and hostile. Plaintiffs documented such harassment on many occasions.

24.     On November 21, 2016 after director Scott Robinson received a phone call from the Port's worker's comp provider, who informed him of a doctor's note regarding how the harassment was affecting Ms. Manard-Henkelman's disability and pain management, Scott Robinson subsequently fired Plaintiff Kim Manard-Henkelman. Scott Robinson informed Plaintiff Manard-Henkelman that he was firing her because she was a liability due to the prescription medication she was taking. Plaintiff Manard-Henkelman believes this was in retaliation for filing a grievance.

25.     On or about November 22, 2016 Port Director Scott Robinson fired Plaintiff Sarah McDaniel. Plaintiffs believe this was in retaliation for their grievances.

26.     Since their separation from the Port of Muskogee, Plaintiffs Manard-Henkelman and McDaniel have been subject to defamation of their characters by employees of the Port including but not limited to having prospective employers and members of the community informed that Ms. Manard-Henkelman was fired for cause, and the cause being theft of Port property. Such conduct is believed to be ongoing. The above list is not exhaustive and Plaintiffs reserve the right to supplement the list as a result of discovery up to and including the date of trial.

26.     As a direct and proximate result of Defendants' actions, Plaintiffs have suffered injuries described hereafter.

**COUNT 1 – DISCRIMINATION BASED ON GENDER**

27. For their cause of action, Plaintiffs incorporate all prior allegations and further allege and state as follows:

28. This count is brought against the Port of Muskogee, its Directors, managers, and Mr. Williams personally.

29. Both Plaintiffs are females and members of a protected class (gender) under Title VII of the Civil Rights Act of 1964 as amended, and covered by similar state law protections.

30. The motivating factor in the termination of Plaintiffs was retaliation for the filing of discrimination complaints.

31. As a direct and proximate result of Defendants actions, Plaintiffs have suffered lost income, past and future income, severe emotional distress and other non-pecuniary losses.

32. Because Defendants' actions were willful, wonton, or, at the least in reckless disregard of Plaintiffs' rights, Plaintiffs are entitled to punitive damages to the extent available.

## COUNT II DEFAMATION

33. In retaliation for the filing of a grievance and a complaint with the EEOC, employees and agents of the Port have made and continue to make defamatory statements about Plaintiffs which have interfered with their ability to find other employment.

34. These statements are actionable under Oklahoma Law 12 O.S. § 1441 (2012) and 12 O.S. § 1442 (2012).

35. The Court has supplemental jurisdiction over Plaintiffs' corresponding state law claims as they arise out of the same core facts as the federal claims, and jurisdiction over them is vested in this Court under 28 U.S.C. § 1367(a).

## REQUEST FOR RELIEF

**WHEREFORE,** Plaintiffs pray that this Court enter judgment in favor of Plaintiffs and against Defendants and assess compensatory damages including but not limited to back pay, future wages, and other compensatory damages together with pre- and post- judgment interest, costs, attorneys' fees, liquidated damages, punitive damages and such other relief as this Court may deem equitable and appropriate or allowed by law.

**RESPECTFULLY SUBMITTED THIS 22 DAY OF NOVEMBER, 2017.**

s/ Grant Climaco Aguirre
Aguirre, Morelli, & Assoc.
616 E. Warner
Guthrie, OK 73044
(405) 414-7054
grant.aguirre@gmail.com

JURY TRIAL DEMANDED
ATTORNEY LIEN CLAIMED